207 So.2d 122

**James W. YEAGER**

v.

**STATE.**

1 Div. 197.

Court of Appeals of Alabama.

Aug. 29, 1967.

Rehearing Denied Oct. 10, 1967.

Affirmed on Mandate Feb. 20, 1968.

Thos. M. Haas and John Coleman, Mobile, for appellant.

MacDonald Gallion, Atty. Gen., and John C. Tyson, III, Asst. Atty. Gen., for the State.

CATES, Judge.

This appeal was submitted February 9, 1967.

October 4, 1966, Yeager was convicted of transporting prohibited liquors in a quantity of five gallons or more. Code 1940, T. 29, § 187, makes such movement a felony. Fitts v. State, 24 Ala.App. 405, 135 So. 654. Yeager was sentenced by the circuit court to two years to be served in the penitentiary.

April 17, 1963, Messrs. H. B. Braswell and Kenneth Cherry, both agents for the Alabama Alcoholic Beverage Control Board (see Code 1940, T. 29, § 5), saw a 1957 Ford back into a garage in Mobile County. The appellant got out and closed the garage

door. After the passage of some minutes, the appellant raised the garage door again and drove the car out.

Braswell and Cherry followed appellant "down to where he turned off on St. Anthony Street." As he stopped at a traffic light, the agents pulled up beside him. From their car they could not see anything. While the traffic signal was red, Braswell got out of his car and went over to Yeager's wherein he saw gallon jugs. Braswell's testimony continues:

"A. We advised the defendant to step out of the car. He stepped out and he advised us that he had a pistol in his right front pocket and he wanted us to remove it. Kenneth Cherry removed the pistol from him—

"Q. Did you see it, yourself?

"A. Yes sir. We removed the pistol from him and asked him what he had and he advised us—

"MR. HAAS: Now if the Court please, I object to that.

"THE COURT: Sustained.

"Q. Alright, well, what did he have,— you can't say what he said, but you can tell what he had?

"MR. HAAS: I object to what he had, because it would take some sort of a search and it hasn't been shown that he had a right to go into that vehicle. It has already been shown over objections, that for some three or four days, he says he had known about this car smelling of whiskey, and I object to his entering the car, taking anything from it, seizing anything, searching it, the stopping the defendant and doing that, unless it is shown that he had a legal right to do it by virtue of a search warrant, or some other legal right, and I further state to the Court that the burden is on the State to show that, and I raise the issue at this time.

"THE COURT: Now has there been' testimony that he smelled shiny, or he smelled the odor of alcohol—

"MR. HAAS: Three or four days before.

"THE COURT: About the automobile?

"MR. HAAS: Yes sir.

"MR. BRUTKIEWICZ: Yes sir, three or four days before.

"Q. But you saw it on that occasion before you even asked him to step out of the car?

A. Yes sir.

"THE COURT: Overruled.

"MR. HAAS: We except. Now, if the Court please, this is a matter that should be gone into outside the presence of the jury. The burden is on the state, once the Defendant raises it, and I'm raising it now.

"THE COURT: Overruled. MR. HAAS: Except.

"Q. What was in that automobile, Mr. Braswell?

"MR. HAAS: Same objections, same grounds.

"THE COURT: Overruled. MR. HAAS: We except.

"A. Fifty gallons of moonshine whiskey contained in—

"MR. HAAS: We move to exclude the answer, same grounds, and as a conclusion of the witness.

"THE COURT: Denied. MR. HAAS: We except."

There was other testimony which qualified Braswell as an expert in determining "shiny" (sic "shinney") whiskey. Braswell's testimony went on to indicate that they "put the defendant under arrest for carrying a concealed weapon," then drove the car into a service station parking lot and

checked the contents of the jugs in the back seat. This checking was done by sticking the finger in and tasting the liquid which proved to be "shinney" whiskey, without any evidence of stamps or tax paid crowns thereon.

As to the common intendment of "shinney," we think that, where used as in Braswell's testimony as a modifier of "whiskey," the commentary of the Supreme Court of Louisiana in State v. McClinton, 152 La. 632, 94 So. 141, can well be quoted:

"* * * the per curiam of the trial judge shows that it is a matter of common knowledge in the town of De Ridder and the parish of Beauregard, where he holds the sessions of the district court, that 'shinney' is intoxicating, and that it is but another name for a homemade, intoxicating whiskey. That 'shinney' is intoxicating seems to be about as well known in the community in which defendant was convicted as that fire will burn or water will drown. Evidently when 'shinney' is called for in that particular bailiwick, there is not the slightest danger of receiving an innocuous, non-alcoholic liquid, containing less than one-half of one per cent. of 'kick.'"

The number of gallons was well established beyond the statutory five, Mr. Braswell stating that he and Cherry "checked about 12" which expression we take to mean that one or the other of them in the presence of each other sampled twelve of the jugs.

No objection was taken to this potential hearsay insofar as what Cherry might have done as distinguished from what Braswell did in this regard. (Cherry was not a witness at the trial.) Thus we take it that the quantitative phase of the indictment was proved.

The defense made a motion to suppress the evidence on the ground that the whiskey was seized through an illegal search and seizure.

With this contention we must agree.

There was no proof of the color of the contents of the jugs, no testimony of any suspicious odor on the occasion, nor other proof whatsoever of the contents being contraband *at the time of their first observation,* which point is critical in this prosecution.

The fact that the defendant may in the recent past have had an odoriferous automobile is not the reasonable probable cause required by the State and Federal Constitutions to justify what, in the context of this evidence, is a mere exploratory search.

These agents are commissioned by the ABC Board for purposes "required for the operation of the business of said board," and the statute (§ 5, supra) says that they have the same authority "designated to peace officers as now authorized by law".

The agents at the traffic light observed no conduct which would indicate to the reasonable man that a breach of the peace was being committed or was about to be committed, nor cause to believe that Yeager had committed a felony.

The so-called order given to Yeager to get out of his automobile which revealed the unlicensed pistol was not based on any reasonable probable cause which would justify an officer to believe that a misdemeanor had been committed in his presence, nor belief of a felony there or elsewhere.

The judgment below is due to be reversed and the cause remanded.

Reversed and remanded.

JOHNSON, J., concurs in result.

CATES, J., affirmed on authority of Yeager v. State, 207 So.2d 122. (1 Div. 489.)